**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BRITTANY ALEXANDER, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SUGAR FACTORY, LLC and SFX HOUSTON 88 LLC, <br><br> Defendants. | Civil Action No. 4:25-cv-9 <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

## **TABLE OF CONTENTS**

I. Introduction ................................................................................................................................. 1

II. Factual Background .................................................................................................................. 2

III. Procedural Background ............................................................................................................ 4

IV. Argument .................................................................................................................................. 5

    a. Court Authorized Notice is Fair, Efficient, and Advances the FLSA's Goals ................... 5

    b. Plaintiffs Sufficiently Allege they are Similarly Situated for Sending Notice .................. 5

        i. Unpaid Minimum Wages ............................................................................................. 7

        ii. Unpaid Overtime ......................................................................................................... 7

        iii. Delayed Payment ........................................................................................................ 8

        iv. Unlawful Tip Pool ....................................................................................................... 9

    c. The Court Should Authorize Notice to Putative Collective Members ............................ 11

        i. Plaintiffs' Proposed Notice is Accurate, Neutral, and Informative ........................... 11

        ii. Multiple Methods of Distribution are Necessary to Provide Effective Notice for This Itinerant Workforce .................................................................................................. 12

        iii. The Court Should Order Defendants to Produce Names and Contact Information for the Proposed Collective ............................................................................................ 13

V. Conclusion ............................................................................................................................... 14

I. **Introduction**

Plaintiffs are former Servers and Bartenders jointly employed by Defendants Sugar Factory, LLC and SFX Houston 88 LLC (collectively "Defendants" or "Sugar Factory") at the Defendants' Houston restaurant location. *See* Dkt. 1 ("Complaint"), ¶¶ 1; 5-6; 15; Exhibit A, Declaration of Brittany Alexander ("B. Alexander Decl.,"), ¶ 1; Exhibit B, Declaration of Mehki Alexander ("M. Alexander Decl."), ¶ 1. Plaintiffs bring this action against Defendants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), *et seq*. Plaintiffs allege three violations of the FLSA: 1) failure to pay overtime and minimum wages; 2) unlawful tip pooling and tip retention, and 3) delayed payment of wages.

Under the FLSA, an employer must pay the minimum wage for all hours worked. 29 U.S.C. § 206. Additionally, the employer must pay for all hours worked over 40 in a workweek at time and one-half the regular rate of pay. 29 U.S.C. § 207. However, Defendants failed to pay Servers and Bartenders the minimum wage for all hours worked during mandatory training on June 27-29, 2024—indeed, Defendants entirely failed to pay Servers and Bartenders for at least some if not all of these work hours—and failed to provide the required overtime pay for all hours worked over 40. And when Defendants did pay Plaintiffs wages, they failed to do so in a timely manner. Plaintiffs therefore challenge Defendants' uniform pay practices, alleging that they violate the FLSA's minimum wage, overtime, and timely pay provisions.

Additionally, under the FLSA, when an employer applies a "tip credit" against the minimum wage, "the employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose." 29 C.F.R. § 531.54(c)(2). Moreover, when the employer takes the tip credit, employees can only be required to contribute to a tip pool if it is limited to employees who customarily and regularly receive tips." 29 C.F.R. §

1

531.54(c)(1). And an "employer may not keep tips received by its employees for any purposes." 29 U.S.C. § 203(m)(2)(B). Defendants implemented a mandatory tip pool at Sugar Factory in which Servers and Bartenders were required to participate. Servers and Bartenders were not given the required information about the tip pool, back of house employees who do not regularly receive tips received distributions from the tip pool, and managers also received distributions from the tip pool. Therefore, Plaintiffs allege that Defendants' tip pooling policy violates the FLSA by 1) failing to inform Plaintiffs of the required information; 2) including back of house employees in a mandatory tip pool in which the employer takes the tip credit, and 3) including managers in a mandatory tip pool.

Through declarations, Plaintiffs demonstrate that they and their coworkers in the positions of Server and Bartender are similarly situated with respect to Defendants' common, unlawful policies and practices. Accordingly, Plaintiffs respectfully request that the Court authorize them to send notice under 29 U.S.C. § 216(b) to potential collective members so that they may be informed of, and can protect, their rights. Counsel for Plaintiffs attempted to confer with Defendants to obtain their position on the Motion, however, Defendants have not responded as of the filing of this Motion.

## II.    Factual Background

Defendant Sugar Factory LLC is a Nevada corporation that owns and operates the chain of Sugar Factory restaurants, including the Sugar Factory location in Houston, Texas. Compl., ¶ 8. Defendant SFX Houston 88, LLC is also a Nevada corporation and is the operator of the Houston Sugar Factory restaurant, located at 5015 Westheimer Rd., Suite 1290, Houston, TX 77056. *Id.* ¶ 9. The Houston Sugar Factory location opened to the public on July 1, 2024. *Id.* ¶ 16; B. Alexander Decl., ¶ 2; M. Alexander Decl., ¶ 2.

Sugar Factory is a chain of restaurants known for celebrity endorsements, and certain high-

priced menu items, like a 36-ounce alcohol-infused smoking candy goblet. Compl., ¶ 17. When a customer orders a specialty item, Sugar Factory Servers perform a choreographed dance. *Id.*

Plaintiff Brittany Alexander worked as a Server at Sugar Factory in Houston from June 27, 2024, until July 25, 2024. B. Alexander Decl., ¶ 1, Plaintiff Mehki Alexander worked as a Server at the Sugar Factory in Houston from June 27, 2024, to June of 2025. M. Alexander Decl., ¶ 1.

Since the restaurant opened to the public, Servers and Bartenders at Sugar Factory have been paid on a weekly basis, B. Alexander Decl., ¶ 9; M. Alexander Decl., ¶ 7, and Defendants apply the "tip credit" towards the minimum wages owed to Servers and Bartenders, paying them a direct wage of only $2.13 per hour. B. Alexander Decl., ¶ 9; M. Alexander Decl., ¶ 7.

Prior to Sugar Factory in Houston opening on July 1, 2024, all Servers and Bartenders who had been hired by Defendants attended a mandatory training held on June 27-29, 2024. B. Alexander Decl., ¶ 3; M. Alexander Decl., ¶ 3. During this training, Servers and Bartenders learned the menu, practiced service, and learned the choreographed dance routines. B. Alexander Decl., ¶ 4; M. Alexander Decl., ¶ 4. Servers and Bartenders spent 21 hours in this mandatory training. B. Alexander Decl., ¶ 3; M. Alexander Decl., ¶ 3. However, Defendants failed to pay Servers and Bartenders for all of the time spent in this training. And, to the extent that any Servers or Bartenders were paid for the time spent working on June 27-29, 2024, they only received 9 hours of pay, approximately 6 weeks after the training occurred. B. Alexander Decl., ¶¶ 5-7; M. Alexander Decl., ¶ 5.

Servers and Bartenders also occasionally work over 40 hours a week. M. Alexander Decl., ¶ 8. However, when they do so, Defendants fail to pay them at the required time and one-half rate for all hours worked over 40 in a workweek. M. Alexander Decl., ¶¶ 9-10.

Defendants also utilize a mandatory tip pool at Sugar Factory in which Servers and

3

Bartenders are required to participate. B. Alexander Decl., ¶ 12; M. Alexander Decl., ¶ 13. Defendants fail to provide Servers and Bartenders with any information about how much they are required to contribute to the tip pool or how the tips will be distributed to employees. B. Alexander Decl., ¶ 13; M. Alexander Decl., ¶ 14. In addition, the mandatory tip pool included both managers and non-tipped, back-of-the-house employees. B. Alexander Decl., ¶¶ 14-16; M. Alexander Decl., ¶¶ 15-17. The managers in the tip pool, namely a corporate trainer named Charles, did not serve customers and performed managerial tasks including supervising Bartenders. B. Alexander Decl., ¶¶ 14-15; M. Alexander Decl., ¶¶ 15-16. And the back-of-house employees in the tip pool, namely a dishwasher, did not customarily earn tips. B. Alexander Decl., ¶ 16; M. Alexander Decl., ¶ 17.

Lastly, Defendants regularly fail to pay Servers and Bartenders in a timely manner, often paying weeks after the employees' regular pay date. B. Alexander Decl., ¶ 6.

### III.  Procedural Background

Plaintiffs filed the Complaint in this putative collective action on January 2, 2025, alleging that Defendants had improperly paid minimum wages and overtime, unlawfully delayed payments, and improperly pooled and retained their tips.[1] *See generally* Compl. After Defendants failed to answer, Plaintiffs moved for an Entry of Default against Defendants, *see* Dkt. 18, which the Clerk entered on March 27, 2025. *See* Dkt. 19.

On May 7, 2025, Defendants moved to set aside the default, *see* Dkt. 21, which the Court granted on June 3, 2025. *See* Dkt. 24. Defendants therefore had until June 17, 2025, to file an Answer. Defendants filed their answer on July 14, 2025. *See* Dkts. 25, 26.

Since the filing of the Complaint, Plaintiffs have filed additional consent forms for opt-in

---

[1] As described in the Complaint, Plaintiffs filed the instant action after submitting a demand letter, initial settlement negotiations that proved unsuccessful, and multiple attempts to comply with Defendants' unenforceable arbitration agreement. *See* Compl., ¶¶ 20; 35-37.

4

plaintiffs who have heard about the lawsuit through word of mouth. *See* Dkt. 6. The total number of Plaintiffs in this case now sits at 8.

IV. **Argument**

Plaintiffs request that the Court authorize notice to be sent to all persons who are or were employed as Servers or Bartenders in the Houston Sugar Factory location since June 1, 2024. For the reasons stated below, Court-authorized notice is appropriate in this case.

### a. *Court Authorized Notice is Fair, Efficient, and Advances the FLSA's Goals*

The FLSA provides for "collective actions," which permit plaintiffs to join "themselves and other employees similarly situated" in actions alleging violations of the FLSA. 29 U.S.C. § 216(b). Such actions are opt-in, however, and similarly situated plaintiffs who wish to join must file a consent form with the court in order to do so. *Id.* The FLSA neither defines the term "similarly situated" nor prescribes any procedures for identifying the population of "similarly situated" employees and facilitating their opting-into the action. Nevertheless, the Supreme Court has explained that "once an [FLSA] action is filed, the [district] court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

To effectuate the FLSA's remedial purposes, courts have the discretion to allow claims to proceed as a collective and to facilitate notice to potential collective members. *White v. Wood Grp. Mustang, Inc.*, 2024 WL 4266761, at *2 (S.D. Tex. Sept. 23, 2024).

### b. *Plaintiffs Sufficiently Allege they are Similarly Situated for Sending Notice*

In *Swales v. KLLM Transport Services, LLC*, the Fifth Circuit did away with the long-standing two-step approach to conditional certification as outlined in *Lusardi.* 985 F.3d 430 (5th Cir. 2021). In *Swales,* the Fifth Circuit held that a "district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, . . . [and] [o]nly

5

then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* at 434. Thus, under *Swales*, certification depends on "whether merits questions can be answered collectively." *Id.* at 442.

"Evidence of similar job description[s], duties, and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Hebert v. Technipfmc USA, Inc.*, 2021 WL 1137256, at *3 (S.D. Tex. Feb. 5, 2021). Indeed, the *Swales* Court stated that when "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job," certification should be granted. *Swales*, 985 F.3d at 441-42; *see also Collins v. Pel-State Bulk Plant, LLC*, 2021 WL 5234968, at *3-4 (W.D. Tex. Sept. 29, 2021) (certifying class based on same job titles, same job duties, same expectations, and same method of compensation). Certification is proper when there is a "factual nexus" that binds the class members' claim together "such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries." *Barker v. ITL Foods, LP*, 2023 WL 5613409, at *3 (S.D. Tex. July 24, 2023) (internal quotations omitted), *report and recommendation adopted*, 2023 WL 5615783 (S.D. Tex. Aug. 29, 2023).

Declarations submitted by Plaintiffs are sufficient to establish that they are similarly situated. *E.g.*, *Ismail v. Grazia Italian Kitchen Pearland LLC*, 2025 WL 569699, at *4 (S.D. Tex. Feb. 21, 2025) (plaintiff's declarations which are based on personal knowledge "are sufficient to establish that all Grazia servers are similarly situated").

Importantly, the "notice stage is not when the court should consider whether Plaintiff can prove an FLSA violation." *Barker*, 2023 WL 5613409, at *4. Rather, the court need only determine at this point if the merits of Plaintiffs' claims can be resolved collectively. *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, 2022 WL 2119542, at *11 (E.D. Tex. June 13, 2022).

6

i. Unpaid Minimum Wages

The FLSA mandates that all hours suffered or permitted to work by an employer must be paid at minimum wage. 29 U.S.C. § 206. Here, Plaintiffs have provided substantial allegations, supported by two declarations, that Defendants unlawfully failed to pay them the requisite minimum wage for their work hours. Specifically, Plaintiffs assert that they were required to attend training from June 27-29, 2024, in preparation for Sugar Factory's Houston location opening to the public on July 1, 2024. B. Alexander Decl., ¶¶ 3-4; M. Alexander Decl., ¶¶ 3-4. Plaintiffs state that they, and other Servers and Bartenders, were not paid for all 21 hours of time spent attending this mandatory training. B. Alexander Decl., ¶¶ 5-8; M. Alexander Decl., ¶¶ 5-6. Therefore, not only were Plaintiffs not paid the required minimum wage for all of the hours they spent working during the training, they were not paid *at all* for their work time.[2] Thus, Plaintiffs are similarly situated regarding their claim for unpaid minimum wages.

ii. Unpaid Overtime

The FLSA also mandates that all hours worked over 40 in a workweek must be paid at one and one-half times the regular rate of pay. 29 U.S.C. § 207(a). Here, Plaintiffs have provided substantial allegations that Defendants failed to pay them for all hours worked over 40 in a workweek at the required time and one-half rate of pay. For example, Plaintiff Mehki Alexander asserts that during the week of August 12-18, 2024, he worked a total of 47 hours, however, he was only paid by Defendants for a total of 31 hours and 59 minutes of work. M. Alexander Decl., ¶¶ 8-10. Additionally, Plaintiff Alexander states that when other Servers and Bartenders worked over 40 hours in a workweek, they similarly were not paid the required time and one-half the

---

[2] Notably, because these work hours occurred prior to the restaurant being open to the public, they must be paid at a rate of at least $7.25 per hour regardless of whether Defendants properly took a tip credit for Plaintiffs' and putative plaintiffs' hours serving customers.

7

regular rate of pay for all hours worked over 40. M. Alexander Decl., ¶ 9. Therefore, all Servers and Bartenders are similarly situated regarding the claim for failure to pay the overtime pay required by the FLSA.

### iii. Delayed Payment

Minimum wages and overtime compensation under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Late payments of overtime "nonetheless violate the FLSA" and an "employer violates the FLSA not only by failing to pay overtime compensation but also by delaying the payment of overtime compensation." *Singer v. City of Waco*, 324 F.3d 813, 828 (5th Cir. 2003); *see also See Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages."); *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir. 1987) ("A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.").

Here, for example, Plaintiff Brittany Alexander asserts that the 9 hours of pay she received for some (but not all) of her initial training hours was delayed, as she did not receive it until approximately 6 weeks after the training had occurred and well past her regular pay day. B. Alexander Decl., ¶ 6. And she alleges that other Servers and Bartenders experienced similar delays in payment for any training hours that were eventually paid by Defendants. *Id.* ¶ 8. Because Plaintiff Brittany Alexander alleges that other Servers and Bartenders also experienced this delay

of pay for training, the Servers and Bartenders are similarly situated with respect to this claim.

### iv. Unlawful Tip Pool

Under the FLSA, when an employer applies a "tip credit" against the minimum wage, "the employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose." 29 C.F.R. § 531.54(c)(2); *see also* 29 U.S.C. § 203(m)(2)(A)(ii) (an employer may not take the tip credit "unless . . . all tips received by [the] employee have been retained by the employee."). Additionally, where an employer takes a tip credit, employees may be required to contribute to a tip pool "only if it is limited to employees who customarily and regularly receive tips." 29 C.F.R. § 531.54(c)(1). Dishwashers and cooks, among others, are not "employed in an occupation in which employees customarily and regularly receive tips." *See* 29 C.F.R. § 531.54(d). If an employer fails to comply with these requirements, it cannot take advantage of the tip credit and must pay employees at the full minimum wage rate for all hours worked. *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015).

Additionally, under the FLSA, an "employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

Here, Plaintiffs have provided substantial allegations that Defendants' tip pool was unlawful because, given that Defendants took the tip credit against the minimum wage when paying Servers and Bartenders, 1) they did not receive the required notification of tip pool contributions; 2) back of house employees were included in the tip pool; and 3) regardless of whether Defendants' took a tip credit, managers were included in the tip pool.

9

First, Plaintiffs unanimously assert that pursuant to uniform policy, they were paid at the lower, tipped, minimum wage of $2.13 per hour. B. Alexander Decl., ¶ 9; M. Alexander Decl., ¶ 7. And all Servers and Bartenders were paid at this lower rate. B. Alexander Decl., ¶ 17; M. Alexander Decl., ¶ 18. Plaintiffs also state that there was, pursuant to a common policy, a mandatory tip pool at Sugar Factory in Houston in which all Servers and Bartenders were required to participate, and that all Servers and Bartenders regularly received tips distributed from the tip pool. B. Alexander Decl., ¶¶ 11-12; M. Alexander Decl., ¶¶ 12-13. Through declarations, Plaintiffs also establish that Defendants did not provide any information to Plaintiffs about the tip pool or how the tips would be distributed, and that no Servers or Bartenders received this information. B. Alexander Decl., ¶ 13; M. Alexander Decl., ¶ 14.

Second, Plaintiffs have established that the tip pool was unlawful because of the persons who received distributions from it. Plaintiffs state in declarations that managerial employees who did not serve customers were a part of the tip pool and took tips when the tips were distributed. B. Alexander Decl., ¶¶ 14-15; M. Alexander Decl., ¶¶ 15-16. Therefore, all Servers and Bartenders were victims of Defendants' policy that allowed them to retain a portion of the tips that were received by Servers and Bartenders. Plaintiffs also state that back-of-house employees, like dishwashers, were a part of the mandatory tip pool, even though they did not serve customers. B. Alexander Decl., ¶ 16; M. Alexander Decl., ¶ 17.

Plaintiffs' declarations establish, through personal knowledge, who was included in the mandatory tip pool. This is sufficient to allege that Plaintiffs and putative plaintiffs are similarly situated and are victims of the same unlawful tip pool policy that required Servers and Bartenders to participate in a mandatory tip pool for which they had no information about distribution, and in which managers and back of house employees improperly received tip distributions. *See, e.g.*,

10

*Stringer v. Big Texan Steak Ranch, Inc.*, 2025 WL 642050, at *4 (N.D. Tex. Feb. 27, 2025) (finding servers similarly situated when plaintiffs provided declarations containing evidence that show all servers are subjected to the same tip-pooling policy). *See also Meine v. TCHDallas2, LLC*, 2024 WL 3345836, at *4 (N.D. Tex. July 9, 2024) ("Defendants purport to prove that floor managers were eligible to participate in the tip pool with dealers, but this is beside the point . . . The Court is deciding whether the similarities among the dealers justify a collective proceeding, not whether the dealers have valid claims.").

### c. The Court Should Authorize Notice to Putative Collective Members

After the Court determines whether Plaintiffs are sufficiently similarly situated, "federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them opportunity to participate by opting in." *Lopez-Gonzales v. Ramos*, 2021 WL 3192171, at *8 (N.D. Tex. July 28, 2021) (citations omitted). Because Plaintiffs have shown that they are similarly situated to each other and the putative collective, Plaintiffs respectfully request that the Court authorize notice to be sent to putative members of the collective via U.S Mail, email, and text message. Plaintiffs also request that a reminder notice be sent 45 days after the sending of the initial notice. As discussed above, Plaintiffs propose sending this notice to all of Defendants' current and previous Servers and Bartenders who have worked for Sugar Factory in Houston since June 1, 2024. Such notice will further the FLSA's "broad remedial goal," further judicial efficiency, and best-protect the rights of putative members of the collective. *Hoffman-La Roche*, 493 U.S. at 170.

### i. Plaintiffs' Proposed Notice is Accurate, Neutral, and Informative

Plaintiffs request that the Court authorize notice to be sent to all individuals who meet the following definition: **All current and former Servers and/or Bartenders at the Sugar Factory**

11

**location in Houston who have been employed for any workweek since June 1, 2024.**[3]

Plaintiffs' proposed Notice, Reminder Notice, Consent to Join Form, and Text Notice, attached as Exhibits C-E, will provide putative collective members with an accurate description of the lawsuit and their rights and will describe who is eligible to join this case. *See Hoffman-La Roche*, 493 U.S. at 172 (requiring notice to be "timely, accurate, and informative"). As such, they should be approved.

Plaintiffs request a 90-day opt-in period, which provides a reasonable time for putative members of the FLSA collective to receive notice and join the lawsuit. *See Stringer*, 2025 WL 642050, at *6 ("courts commonly approve notice periods of 90 days within the context of FLSA collective actions" and approving a 90-day opt-in period); *Winkler v. Sunbelt Rentals, Inc.*, 2013 WL 12137735, at *5 (N.D. Tex. June 21, 2013) (approving a 90-day opt-in period); *Page v. Nova Healthcare Mgmt., LLP*, 2013 WL 4782749, at *7 (S.D. Tex. Sept. 6, 2013) (finding a 90-day opt-in deadline appropriate);

    ii. Multiple Methods of Distribution are Necessary to Provide Effective Notice for This Itinerant Workforce

Plaintiffs ask that the Court authorize notice be sent by U.S. Mail, e-mail, and text message, particularly given that this is an itinerant workforce. *See Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristics of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("Mail, email and text messaging is reasonable because, in today's society, individuals are likely to retain their mobile

---

[3] Plaintiffs propose sending notice to all Servers and Bartenders who worked for Sugar Factory in Houston since June 1, 2024, because the restaurant did not open to the public until July 1, 2024, and Servers and Bartenders attended training in June of 2024.

numbers and emails addresses even when they move."). Notice through these methods is commonly approved in this district. *See, e.g.*, *Ismail*, 2025 WL 569699, at *6 (allowing notice by email and text, stating that "notice by email and text message will increase the likelihood that class members will learn about this lawsuit"); *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("I find that providing notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society.").

Plaintiffs also request that the Court authorize a reminder Notice be sent via the same methods to putative collective members who have not yet returned a Consent to Join form halfway through the notice period, or 45 days after the initial Notice. Reminder notices are common and do not cause Defendants any prejudice. *See Ismail*, 2025 WL 569699, at *7 (stating that "reminder notices to potential class members are appropriate").

Plaintiffs further request that the Court authorize Notice be posted on a standalone website, through which potential collective members can electronically submit Consent to Join Forms, which is a method of notice which has been approved in this Circuit. *See, e.g.*, *Cervantez v. TDT Consulting, LLC*, 2019 WL 3948355, at *10 (N.D. Tex. July 22, 2019); *Qazi v. Stage Stores, Inc.*, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019); *Kalenga v. Irving Holdings, Inc.*, 2020 WL 2841396, at *7 (N.D. Tex. June 1, 2020).

### iii. The Court Should Order Defendants to Produce Names and Contact Information for the Proposed Collective

To facilitate effective notice, Plaintiffs ask that the Court order Defendants to produce names and contact information for all putative collective members within 14 days of the Court's Order granting this Motion. The information should include, at a minimum: 1) first and last names; 2) last known mailing address; 3) last known cell phone number; 4) last known personal email address; 5) dates of employment; and, if applicable, 6) employee identification numbers.

13

Production of such information is standard in FLSA cases because it facilitates locating collective members and ensuring they receive timely notice. *See, e.g.*, *Stringer*, 2025 WL 642050, at *7 ("Courts commonly order employers to produce such information for the purpose of facilitating collective-action notice"); *Molina-Torres v. Harris Cnty. Constable Precinct 6*, 2024 WL 1703089, at *6 (S.D. Tex. Apr. 19, 2024) ("Courts routinely order defendants to provide the names, addresses, emails, and phone numbers of employes to facilitate notice in FLSA collective actions.").

## V.     Conclusion

For the foregoing reasons, the Court should: 1) authorize the issuance of notice to the FLSA collective, defined as "All current and former Servers and/or Bartenders at the Sugar Factory location in Houston who have been employed for any workweek since June 1, 2024," 2) order Defendants to produce a computer-readable data file containing names, last known mailing addresses, cell phone numbers, personal email addresses, dates of employment, and employee ID numbers, and 3) approve Plaintiffs' proposed Notice, Reminder Notice, and Consent to Join Form, and the plan for distribution.

Dated: August 15, 2025

/s/Matt Bachop
Matt Bachop
Texas State Bar No. 24055127
DEATS, DURST & OWEN, P.L.L.C.
8140 N Mopac Expy., Suite 4-250
Austin, TX 78759
Tel: (512) 474-6200 x1005
Fax: (512) 474-7896
E-mail: mbachop@ddollaw.com

*Attorney-in-Charge for Plaintiffs*

/s/ Molly A. Elkin
Molly A. Elkin (*admitted pro hac vice*)
Sarah M. Block (*admitted pro hac vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000

Washington, DC 20005
Tel: (202) 833-8855
Fax: (202) 452-1090
E-mail: mae@mselaborlaw.com
E-mail: smb@mselaborlaw.com

*Of Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I filed the foregoing document on this Court's CM/ECF system, which will serve copies on all counsel of record.

*/s/ Molly A. Elkin*
Molly A. Elkin