**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

BRITTANY ALEXANDER, on behalf of
herself and all others similarly situated,

Plaintiffs,

v.

SUGAR FACTORY, LLC and
SFX HOUSTON 88 LLC,

Defendants.

Civil Action No. 4:25-cv-9

**PLAINTIFFS' MOTION TO REOPEN CASE AND FOR
ORDER TO SHOW CAUSE TO HOLD DEFENDANTS IN CONTEMPT**

Plaintiffs hereby request that this Court reopen this case and enter an order compelling Defendants to show cause as to why they should not be held in contempt for violating this Court's Final Judgment, entered on October 22, 2025, Dkt. 31.

As described below, Plaintiffs conferred via email with Defendants regarding their position with respect to this Motion on March 19 and 24, 2026. On March 19, Defendants responded with their belief that it "would be a waste of judicial & party resources to file a motion at this point." *See* Exhibit 1 (email correspondence between Plaintiffs' Counsel and Defense Counsel). Plaintiffs reached out again on March 24 to clarify the type of motion that Plaintiffs would be filing, but to date, Defendants have failed to respond. *Id.*

**I.      Background**

On September 3, 2025, the Parties notified the Court that they had reached a settlement in principle. Dkt. 28. After coming to an agreement on the terms and conditions of the written Settlement Agreement, and executing the Agreement, the Parties submitted a Joint Notice of

1

Proposed Final Judgment to this Court on October 15, 2025. Dkt. 30. On October 22, 2025, this Court entered a Final Judgment, rendering judgment in favor of Plaintiffs in the sum of $35,000. Dkt. 31.

Specifically, the Final Judgment ordered that Defendants shall pay the backpay, liquidated damages, and service awards pursuant to the terms of the Parties' Agreement (as set forth in the Final Judgment) within 14 days of the entry of the judgment, or by November 6, 2025. *Id.* The Final Judgment also ordered that Defendants pay the attorneys' fees and costs to Plaintiffs' Counsel in four installments of $5,000 each on a monthly basis, with the first payment due 30 days after the entry of the judgment, which would be November 22, 2025. *Id.* The Final Judgment specified that in the event Defendants fail to comply with the deadlines, Defendants shall pay post-judgment interest consistent with 28 U.S.C. § 1961. *Id.*

Pursuant to the terms of Final Judgment, on October 23, 2025, Plaintiffs sent Defendants a copy of McGillivary Steele Elkin LLP's W-9, and outlined the relevant deadlines for payment, including the November 6, 2025, deadline for payment of the backpay, liquidated damages, and service awards, and the monthly installment payments of attorneys' fees on November 22, 2025, December 22, 2025, January 21, 2026, and February 20, 2026. *See* Exhibit 1. Plaintiffs received the check for the backpay, liquidated damages, and service awards on November 10, 2025, after it was sent by the Defendants on November 6, 2025. *Id.*

On November 24, 2025, Plaintiffs requested a tracking number for the first attorneys' fees installment payment that was due on November 22, 2025. *Id.* After not receiving a substantive response from Defendants, Plaintiffs followed up on December 2, 2025, and also requested a reissued backpay check for plaintiff Laquisha Richardson, who moved to a different address and was unable to obtain the originally mailed backpay check. *Id.* Plaintiffs followed up about the

November installment payment and the requested backpay reissue check on December 9, 2025. *Id.* Plaintiffs noted that interest was already due on the initial installment payment pursuant to 28 U.S.C. § 1961, so if they did not receive the November payment by the end of the week, that they would begin to calculate interest accordingly. *Id.*

After continued correspondence regarding the reissued backpay check for Plaintiff Richardson, on December 17, 2025, Plaintiffs sent Defense counsel an emailed following up on whether the backpay check had been reissued, as well as on the missed November attorneys' fee installment payment and the upcoming December attorneys' fee installment payment and stated how much interest was owed. *Id.* Defendants responded the same day confirming the amounts owed for the two attorneys' fees installment payments, including interest, as well as the requested backpay check reissue. *Id.* On December 19, 2025, Plaintiffs requested another reissued backpay check for Plaintiff Teamptrails Smyer, whose originally backpay check was lost in the mail. *Id.* The same day, Defendants stated that they were **"taking care of payments from earlier this week."** *Id.*

On January 6, 2026, after not receiving any of the missing payments or any information regarding mail tracking, Plaintiffs emailed asking for yet another update on the two missed installment attorneys' fees payments and the two requested backpay check reissues. *Id.* The same day, Defendants responded that the **"payments were sent."** *Id.* A week later, on January 15, 2026, Plaintiffs informed Defendants that they had not received any payments, and reminded defense counsel that another attorneys' fee installment payment was due the next week on January 21, 2026. *Id.* Defendants responded the same day and, despite prior confirmation that "payments were sent," now told Plaintiffs that **"payments were processed and would be delivered as instructed."** *Id.*

3

When Plaintiffs still had not received any of the missing payments, Plaintiffs followed up on January 20 and January 23, 2026, and still, Defendants did not provide any substantive information on the status of the payments or their mailing. *Id.* After yet another email from Plaintiffs, Defendants responded on January 29, 2026, that—contrary to the multiple prior emails—defense counsel had been told that **"accounting was processing payments."** *Id.*

On February 13, 2026, after still not receiving any payments including the now overdue third installment attorneys' fee payment, Plaintiffs reached out and again and set forth the amount owed for the three attorneys' fees installment payments, including interest, and the two requested backpay reissued checks. *Id.* Plaintiffs also informed Defendants that they would explore options to enforce the settlement agreement given the significant delays and the Defendants' continued noncompliance with the Parties' settlement agreement and the Court's Final Judgment. *Id.* The same day, Defendants informed Plaintiffs that payments were, allegedly, **sent two weeks prior**, but that they will get back to us with tracking information. *Id.* After still not receiving anything, Plaintiffs followed up against on February 18 and February 26, 2026, noting that not only had they not received any payments, but that the February attorneys' fees installment payment was also now late. *Id.*

Finally, on March 3, 2026, Defendants responded and said that "**all payments will be made by April**." *Id.* Plaintiffs responded with the amount owed, plus interest calculated through the end of March 2026, for the four attorneys' fees installment payments, as well as the amounts still outstanding for the two backpay checks to be reissued. *Id.* Plaintiffs then requested a firm date for payments, asked for shipment tracking information, and informed Defendants that if payments are not received by April 1, 2026, then they will file a motion to enforce the settlement. *Id.* The same

day, Defendants stated that payments will be made by **April 15, and said they will provide tracking information as soon as it is available.** *Id.*

Based on this information, and the fact that Defendants have not paid Plaintiffs ***any*** of the attorneys' fees owed and have given inconsistent (and patently incorrect) information about payment status for months, Plaintiffs informed Defendants that they would be filing a motion to enforce the settlement. *Id.* As of the filing of this motion, Plaintiffs have not received any attorneys' fees installment payments or either of the reissued backpay checks, any indication that the payments will actually be made (not just by April 15, but at all), or any tracking information for payments that have been processed and sent. *Id.*

## II.    The Court Should Enter an Order Compelling Defendants to Show Cause Why They Should Not Be Held in Contempt

"Courts have the inherent power to enforce compliance with their orders through civil contempt." *Sec. & Exch. Comm'n v. Allen*, 2014 WL 99974, at \*2 (N.D. Tex. Jan. 10, 2014). To be entitled to reopen a case for a contempt proceedings, the "movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004); *see also Hydro Brand Inc. v. Prime Hookah, Inc.*, 2023 WL 11891775, at \*2-3 (S.D. Tex. Mar. 30, 2023) (reopening case for contempt proceedings). "In civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order." *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) (cleaned up).

Here, there is clear and convincing evidence that Defendants should be held in contempt. First, there is an enforceable Final Judgment issued by this Court ordering Defendants to pay specified sums of money by clearly identified deadlines. Dkt. 31. And, it is clear that Defendants

have failed to comply with this Final Judgment. *See generally* Exhibit 1. Defendants have failed to pay **any** of the $5,000 installment payments owed as attorneys' fees to McGillivary Steele Elkin LLP, despite repeated reminders and follow-ups. Defendants have also failed to re-issue the backpay checks to two Plaintiffs despite repeated requests, and have now failed to pay interest owed on the outstanding attorneys' fee installment payments as required by the Final Judgment.

Defendants have failed to be honest with Plaintiffs about the status of payment, telling Plaintiffs on December 19, 2025, that payments were being taken care of, that payments were sent on January 6, 2026, that payments were being processed on January 15 and January 29, 2026, that payments were sent two weeks ago on February 13, 2026, that payments would be made by April on March 3, 2026, and that payments would be made by April 15 on March 18, 2026. At no point have Defendants provided a tracking number for the payments or made any actual indication that the payments were being made, other than for the first check for the initial backpay and liquidated damages. After months of attempting to resolve the issue without Court intervention, Plaintiffs now have no choice but to involve the Court to hold Defendants in contempt.

### III.   This Court Should Impose Sanctions on Defendants

"[S]anctions in civil contempt proceedings may be employed 'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 443 (1986) (quoting *United States v. Mine Wkrs. of Am.*, 330 U.S. 258, 303-04 (1947)). The Fifth Circuit has articulated four factors relevant to determining the appropriate sanction for contempt: (1) the nature of the conduct sought to be deterred; (2) the relationship between the costs incurred and the sanctionable conduct; (3) the reasonableness of the costs or

expenses; and (4) the proportionality of the sanction to the conduct being deterred. *See Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

Here, Plaintiffs request that the Court grant attorneys' fees and costs in conjunction with work performed in trying to obtain payment as required by the Final Judgment and for filing this Motion, as well as for attending any show cause hearing. *See Dresser-Rand Co. v. Cunningham*, 2007 WL 9736249, at *4 (S.D. Tex. Nov. 30, 2007) ("The court has discretion to grant an injured party its reasonable attorney's fees and expenses incurred as a result of the contemnor's conduct."); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered. . . ."). Currently[1], using reasonable billing rates in the Southern District of Texas, Plaintiffs are owed $7,401.99 in attorneys' fees and expenses for Plaintiffs' efforts to obtain Defendants' compliance with the Final Judgment and in preparing and filing this motion. *See* Exhibit 2 (Declaration of Molly A. Elkin) at Exhibit A.

## IV. Conclusion

For the foregoing reasons, this Court should enter an order to show cause why Defendants should not be held in contempt for failing to comply with the Final Judgment (Dkt. 31), and be ordered to pay additional attorneys' fees and costs.

Dated: March 27, 2026

Respectfully submitted,

*/s/Matt Bachop*
Matt Bachop
Texas State Bar No. 24055127
DEATS, DURST & OWEN, P.L.L.C.
8140 N Mopac Expy.
Suite 4-250
Austin, TX 78759

---

[1] Should this Court hold an in-person show cause hearing, the Court should allow Plaintiffs to file an updated application for attorneys' fees and costs.

7

Tel: (512) 474-6200 x1005
Fax: (512) 474-7896
E-mail: mbachop@ddollaw.com

*Attorney-in-Charge for Plaintiffs*

*/s/ Molly A. Elkin*
Molly A. Elkin *(admitted pro hac vice)*
Sarah M. Block *(admitted pro hac vice)*
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, DC 20005
Tel: (202) 833-8855
Fax: (202) 452-1090
E-mail: mae@mselaborlaw.com
E-mail: smb@mselaborlaw.com

*Of Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a copy of the foregoing document and attachments were served on all counsel of record via the Court's CM/ECF system.

*/s/Molly Elkin*
Molly Elkin

8